UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

LONNIE W. BAWGUS,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀No. 2:22-CV-00132-JRG-CRW
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNITED STATES OF AMERICA,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Respondent.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

**MEMORANDUM OPINION**

This matter is before the Court on Petitioner Lonnie Bawgus's Motion for Modification of Sentence [Doc. 1], Motion on Supreme Court Update [Doc. 1-1], Motion for Court to Take Judicial Notion [sic] of the New Supreme Court Decision in *Wooden v. United States* [Doc. 1-2], Motion for Rehearing on ACCA [Doc. 1-3]—all of which the Court construed as a single motion for relief under 28 U.S.C. § 2255 after providing Mr. Bawgus with notice of its intent to do so. *See* [Mem. Op. & Order, Doc. 239, at 5, No. 2:09-CR-00060-1-JRG]—the United States's Response in Opposition [Doc. 5], Mr. Bawgus's Reply [Doc. 11], Mr. Bawgus's Supplemental Motions [Docs. 3, 10, & 12], the United States's Response in Opposition [Doc. 15], and Mr. Bawgus's Motions for Entry of a Default Judgment [Docs. 7, 16, 17, & 18]. For the reasons herein, the Court will deny Mr. Bawgus's motions.

## I.⠀⠀BACKGROUND

In 2010, a petit jury convicted Mr. Bawgus of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [Verdict Form, Doc. 115, at 1, No. 2:09-CR-00060-1-JRG]. He had multiple prior convictions under Tennessee law—one for aggravated assault and fourteen for aggravated burglary—and at sentencing, these prior convictions became a focal

point under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). [PSR ¶¶ 38, 41, 42 (on file with the Court)]. Under the ACCA, a defendant with a conviction for being a felon in possession of a firearm will receive an enhanced sentence[1] if he is an armed career criminal—i.e., someone who has committed at least three serious drug offenses or violent felonies. At the time, the ACCA defined a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"); (2) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

After determining that Mr. Bawgus was an armed career criminal based on his previous offenses for aggravated assault and aggravated burglary, the Court sentenced him to an enhanced sentence of 210 months' imprisonment. [J., Doc. 126, at 2, 2:09-CR-00060-1-JRG]. He later collaterally attacked his conviction and sentence under 28 U.S.C. § 2255, raising the Supreme Court's then-recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and arguing, in light of *Johnson*, that this Court should not have sentenced him under the ACCA because his Tennessee convictions for aggravated burglary no longer qualified as violent felonies. In *Johnson*, the Supreme Court held that the ACCA's residual clause is unconstitutionally vague, but it did not automatically invalidate all sentences under the ACCA. *See id.* at 606 ("Today's

---

[1] At the time of Mr. Bawgus's sentencing, a felon who possessed a firearm faced a maximum penalty of ten years' imprisonment, 18 U.S.C. § 924(a)(2) (2011) (amended 2022), and three years' supervised release, *id.* §§ 3559(a)(3) and 3583(b)(2), but if that felon possessed the firearm after having incurred three prior convictions "for a violent felony or serious drug offense, or both," the ACCA required a fifteen-year minimum sentence, *id.* § 924(e)(1), and increased the maximum supervised release term to five years, *id.* §§ 3559(a)(1) and 3583(b)(1).

decision does not call into question application of the Act to . . . the remainder of the Act's definition of a violent felony.").

This Court reserved ruling on Mr. Bawgus's motion until the Sixth Circuit, in *United States v. Stitt*, 860 F.3d 854 (6th Cir. 2017) (en banc), addressed an issue that was germane to his case: whether Tennessee aggravated burglary constitutes a violent felony under the ACCA's enumerated-offense clause. [Order, Doc. 180, at 1, No. 2:09-CR-00060-1-JRG]. In *Stitt*, the Sixth Circuit ultimately went on to hold that "a conviction for Tennessee aggravated burglary is not a violent felony for purposes of the ACCA." 860 F.3d at 856.

Relying on *Johnson* and *Stitt*, this Court granted Mr. Bawgus's § 2255 motion, vacated the judgment, and ordered a resentencing hearing, [Mem. Op., Doc. 188, at 5–9, No. 2:09-CR-00060-1-JRG; J., Doc. 86, at 1, No. 2:09-CR-00060-1-JRG], and after holding a resentencing hearing, it sentenced him without the ACCA's enhancement to 105 months, [Second J., Doc. 197, at 2, No. 2:09-CR-00060-1-JRG]. The Supreme Court, however, later reversed *Stitt*, *United States v. Stitt*, 139 S. Ct. 399, 408 (2018), prompting the United States to appeal Mr. Bawgus's amended sentence and argue for the reinstatement of his original 210-month sentence. [Notice of Appeal, Doc. 200, at 1, No. 2:09-CR-00060-1-JRG]. The Sixth Circuit vacated this Court's grant of *Stitt*-based relief to Mr. Bawgus and remanded the case with instructions for this Court to reinstate the original 210-month sentence, [Sixth Circuit Order, Doc. 210, at 4, No. 2:09-CR-00060-1-JRG], and this Court did so, [Order, Doc. 212, at 1, No. 2:09-CR-00060-1-JRG].

Mr. Bawgus has now filed a new § 2255 motion, in which he challenges his most recent sentence, i.e., the reinstated 210-month sentence. The United States opposes his motion. Having carefully considered Mr. Bawgus's motion and the parties' arguments, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). The legal standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)); *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) ("The principle that collateral review is different from direct review resounds throughout our habeas jurisprudence." (citations omitted)).

This so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

"A prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

4

fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). To obtain relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the [underlying] proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht*, 507 U.S. at 637–38). To obtain relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. To discharge this burden, a petitioner must allege sufficient facts showing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

### III. ANALYSIS

In pursuing relief under § 2255, Mr. Bawgus raises three main arguments. First, he invokes the Supreme Court's decision *Wooden v. United States*, 595 U.S. 360 (2022), to argue

that the Court should annul his career-offender designation under the ACCA. Second, he asserts

that a jury rather than the Court should have decided the occasions-different inquiry under the

ACCA. And third, he moves for a default judgment against the United States.[2] In response, the

United States maintains that each of Mr. Bawgus's arguments lacks merit.

### A. *Wooden v. United States*

The ACCA requires the Court to impose a fifteen-year mandatory minimum sentence

for a defendant who violates § 922(g)(1)—the statute under which the jury convicted Mr.

Bawgus in 2010—if that defendant "has three previous convictions by any court referred to in

section 922(g)(1) of this title for a violent felony or serious drug offense, or both, *committed on*

*occasions different from one another.*" 18 U.S.C. § 924(e)(1) (emphasis added). This italicized

language is known as the "occasions clause" of the ACCA, and it was at issue in the Supreme

Court's decision in *Wooden*, in which the Supreme Court addressed whether the defendant—

who had burgled ten separate storage units on a single night—had committed his crimes on the

same occasion or ten separate occasions. *Wooden*, 595 U.S. at 366.

The Supreme Court held that the defendant did not qualify as an armed career criminal

because he committed his crimes on the same occasion and not on ten separate occasions. *Id.* In

reaching this holding, the Supreme Court reasoned that the defendant's crimes took place on the

same night, in the same building, and as part of the same scheme; indeed, he had burgled the

---

[2] Mr. Bawgus also argues that he has "NEVER had a gun in [his] life," has "never been caught with a gun in his life," and "[t]he gun was not [his]." [Pet'r's Suppl. Mot., Doc. 3, at 2]. The Sixth Circuit, however, has "repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding." *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (citation omitted); *United States v. Shields*, 291 F.2d 798, 799 (6th Cir. 1961) ("A Section 2255 proceeding cannot be used as a substitute for an appeal. The sufficiency of the evidence to prove the alleged offenses will not be reviewed in such a proceeding." (citations omitted)); *Mitchell v. United States*, Nos. 2:05-CV-274, 2:04-CR-02, 2007 WL 325762, at *3 (E.D. Tenn. Jan. 31, 2007) ("Section 2255 cannot be used to attack the sufficiency of the evidence by which a defendant is convicted, as that is an issue that can be raised only by direct appeal." (citing *Stephan v. United States*, 496 F.2d 527, 528–29 (6th Cir. 1974))).

ten storage units in the same facility, one after the other, by "'crushing the interior drywall' between them." *Id.* at 363, 366–69. So unlike crimes that occurred "a day or more apart" or "at a 'significant distance,'" the defendant's crimes occurred on one occasion. *Id.* at 370.

Relying on *Wooden*, Mr. Bawgus contends that he does "NOT have the 3 convictions" necessary to trigger career-offender status under the ACCA because his "fourteen burglary convictions . . . ar[ose] from a single crime spree episode and only 1 arrest for them all." [Pet'r's Mot. Rehearing at 2]. In other words, Mr. Bawgus asserts that his fourteen burglaries did not occur on occasions different from one another. The United States disagrees, arguing that Mr. Bawgus "committed at least eleven of his ACCA predicates on different dates that were days, and in some cases weeks or years, apart from one another," and "the burglaries he committed on the same day were committed in different locations." [United States's Resp., Doc. 5, at 6].

As an initial matter, *Wooden* cannot avail Mr. Bawgus because it is not retroactively applicable to cases on collateral review.[3] *See Mitchell v. United States*, 43 F.4th 608, 617 (2022) ("*Wooden* decided a matter of statutory interpretation, not constitutional law."); *see also Culbertson v. Gomez*, No. 22-5659, 2023 WL 9423008, at *2 (6th Cir. Sept. 12, 2023) (declaring that "*Wooden* . . . is a case of statutory interpretation and did not announce a new rule of constitutional law made retroactive to cases on collateral review" (citing *Mitchell*, 43 F.4th at 617)); *see generally Teague v. Lane*, 489 U.S. 288, 300 (1989) ("[S]ua sponte consideration of retroactivity is far from novel."). But Mr. Bawgus's pursuit of post-conviction relief does not end with *Wooden*, because he also argues that a jury rather than the Court should have decided

---

[3] Under § 2255(f)(3), a claim is cognizable only if it rests on a "newly recognized" right, as announced by the Supreme Court,[3] and only if that right is "retroactively applicable to cases on collateral review." § 2255(f)(3). A new right is retroactive to cases on collateral review only if the Supreme Court holds it to be retroactive. *Tyler v. Cain*, 533 U.S. 656, 663 (2001). The term "right" in § 2255(f)(3) refers to both constitutional and statutory rights. *Hueso v. Barnhart*, 948 F.3d 324, 335 (6th Cir. 2020).

whether he committed his predicate offenses on occasions different from one another, and this summer, the Supreme Court, in *Erlinger v. United States*, 144 S. Ct. 1840 (2024), did in fact hold that the Sixth Amendment[4] requires a jury to make the occasions-different finding, *id.* at 1852. As is the case with *Wooden*, though, "[t]he Supreme Court did not . . . hold that its ruling [in *Erlinger*] was retroactive on collateral review." *Yerkes v. United States*, Nos. 1:24-cv-228, 1:18-cr-38, 2024 WL 3460108, at *2 n.1 (E.D. Tenn. July 17, 2024).

Even if *Wooden* and *Erlinger* were retroactively applicable on collateral review, Mr. Bawgus would still not be entitled to relief because, as the United States argues, he does not satisfy the legal standard that "applies in determining whether habeas relief must be granted because of constitutional error of the trial type," and that legal standard is the harmless-error standard. *Brecht*, 507 U.S. at 638 (footnote omitted); *see Erlinger*, 144 S. Ct. at 1860 ("[A] defendant is entitled to have a jury determine beyond a reasonable doubt whether his predicate offenses were committed on different occasions for purposes of the Armed Career Criminal Act. But . . . violations of that right are subject to harmless error review." (Roberts, C.J., concurring)); *see generally Washington v. Recuenco*, 548 U.S. 212, 222 (2006) (deciding that "[f]ailure to submit a sentencing factor to the jury" was subject to harmless-error review).

The "general rule" is that "a constitutional error does not automatically require reversal of a conviction." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991). Indeed, the Supreme Court has "repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal" and "[i]nstead, 'most constitutional errors can be harmless.'" *Recuenco*, 548 U.S. 218 (quotation omitted). Under the harmless-error standard, reversal of a conviction is appropriate only if the jury's failure to make the occasions-different

---

[4] "The Sixth Amendment promises that '[i]n all criminal prosecutions the accused' has 'the right to a speedy and public trial, by an impartial jury.'" *Erlinger*, 144 S. Ct. at 1849.

finding at Mr. Bawgus's trial "had substantial and injurious effect or influence" on its verdict.

*Brecht*, 507 U.S. at 638 (quotation omitted). Phrased a little differently:

> [Harmless] errors . . . infringe upon the jury's factfinding role and affect the jury's deliberative process in ways that are, strictly speaking, not readily calculable. We think, therefore, that the harmless-error inquiry must be . . . [i]s it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?

*Neder v. United States*, 527 U.S. 1, 18 (1999).

In Mr. Bawgus's case, the fact that the Court, under then-existing law in this circuit, did not reserve the occasions-different inquiry for the jury was harmless error. When a defendant commits predicate offenses "a day or more apart or at a 'significant distance,'" those offenses should "nearly always [be] treated [as] . . . occurring on separate occasions." *Wooden*, 595 U.S. at 370 (quotation and citation omitted). Mr. Bawgus committed at least eleven of his predicate offenses on different days, months, or years and in different locations, as the United States aptly describes:

> The records for [Mr. Bawgus's] ACCA predicates show that at least eleven of them . . . were committed a day or more apart. [Mr. Bawgus] committed the aggravated assault on March 23, 1997. Over three years later, he began to commit the series of [fourteen] burglaries. He committed them on at least ten separate dates in 2000: August 4, August 5, August 29, August 30, September 11, September 13, September 14, September 19, September 25, and October 3. And each burglary—even the ones committed on the same day—involved a separate residence or business.

[United States's Resp. at 6 (citing Docs. 5-1, 5-2, & 5-3)]; *see generally Erlinger*, 144 S. Ct. 1854 (noting that courts may rely on so-called *Shepard* documents to determine "the fact of a prior conviction"). No rational jury—when instructed that it may consider the timing, location, character, and relationship of Mr. Bawgus's offenses, including whether they took place on different days or at significant distances from one another, *Wooden*, 595 U.S. at 369–71—could have found that Mr. Bawgus did not commit his predicate offenses on different occasions. Any

constitutional error from the jury's failure to make this finding is therefore harmless error, and Mr. Bawgus is not entitled to the extraordinary remedy of § 2255 relief.

## B. Default Judgment

Next, Mr. Bawgus asserts that he is entitled to entry of a default judgment against the United States because it has failed to respond "concerning [his] incarceration without due process of law." [Pet'r's Mot. for Default, Doc. 18, at 2]. In response, the United States notes that it "timely filed its response" and that "[i]n any event, default judgments are not available in [§ 2255 proceedings]." [United States's Resp., Doc. 15, at 2 n.1]. The United States is correct. *See United States v. Bawgus*, 782 F. App'x 408, 409–10 (6th Cir. 2019) ("[The petitioner] alternatively argues that the government's failure to respond to a district court order [requiring a response] . . . bars it from challenging his § 2255 relief. But whether the government appropriately responded to that order does not discharge [the petitioner's] burden to prove entitlement to habeas relief." (citations omitted)); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970) ("The failure of State officials to file a timely return does not relieve the prisoner of his burden of proof. Default judgments in habeas corpus proceedings are not available as a procedure to empty State prisons[.]" (citations omitted)); *United States v. Mitchell*, No. 15-20609, 2019 WL 1931988, at *3 (E.D. Mich. Apr. 30, 2019) (stating that a "[d]efault judgment is not appropriate in habeas cases—and, by extension of reasoning, to § 2255 cases—'on the ground that state officials fail to file a timely response to a petition'" (quoting *Mahady v. Cason*, 222 F. Supp. 2d 918, 922 (E.D. Mich. 2002))). Mr. Bawgus is therefore not entitled § 2255 relief by way of a default judgment.

## C.  Certificate of Appealability

Lastly, the Court must now determine whether to issue a certificate of appealability, which is necessary for Mr. Bawgus to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claims on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having addressed the merits of Mr. Bawgus's claims, the Court does not conclude that reasonable jurists would find that its rejection of his claim is  debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Mr. Bawgus.

## IV.  CONCLUSION

As the petitioner under § 2255, Mr. Bawgus fails to meet his burden of establishing that his conviction and sentence were in violation of the Constitution, or that a fundamental defect resulted in either a complete miscarriage of justice or an egregious error. His § 2255 motion [Docs. 1, 1-1, 1-2, & 1-3], his supplemental motions [Docs. 3, 10, & 12], and his motions for a default judgment [Docs. 7, 16, 17, & 18] are therefore **DENIED**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
_____
UNITED STATES DISTRICT JUDGE

11